NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CATHERINE B., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY,[1] T.M., T.M., T.M., T.M., *Appellees*.

No. 1 CA-JV 15-0089
FILED 9-1-2015

Appeal from the Superior Court in Yavapai County
No. P1300JD201200062
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Law Office of Florence M. Bruemmer, Anthem
By Florence M. Bruemmer
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Eric Knobloch
*Counsel for Appellee DCS*

---

[1] Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted), the Arizona Department of Child Safety ("DCS") is substituted for the Arizona Department of Economic Security in this matter. *See* ARCAP 27. For purposes of consistency, we will refer to DCS throughout this decision.

---

**MEMORANDUM DECISION**

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Samuel A. Thumma joined.

---

**K E S S L E R**, Judge:

¶1        Catherine B. ("Mother") appeals from the juvenile court's order terminating her parental rights to T.M., born in 2006, T.M., born in 2007, T.M., born in 2011, and T.M., born in 2012 (collectively "the children"). For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Mother is the biological parent of the children.  The father Terry M., ("Father"), whose parental rights were terminated, is not a party to this appeal.[2]  In August 2012, the children were removed from the home after the youngest child was born substance exposed to marijuana.  DCS alleged abuse and/or neglect due to substance abuse, mental illness, and domestic violence.  The children were found dependent, the State provided services, the family successfully reunified, and the dependency was dismissed in September 2013.

¶3        Nine months later, in June 2014, DCS again removed the children.   The subsequent dependency petition and motion for severance both alleged abuse and/or neglect due to Mother's substance abuse, mental illness, and domestic violence.  *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(2) (Supp. 2014).   DCS also sought severance based on neglect due to homelessness and the previous dependency.  *See* A.R.S. § 8-533(B)(11).

¶4        The basis for this dependency was a report DCS received alleging the parents were engaging in substance abuse and domestic violence.  DCS, in turn, reported to the juvenile court that the two oldest children were located at the paternal great grandmother's ("Grandmother")

---

[2] At a preconference hearing, Father stated that he did not wish to go to trial.  Father believed the State had enough evidence to prevail at trial and felt permanency was best for the children.  The juvenile court confirmed Father was aware of his trial rights and accepted his plea of no contest.  The court then terminated Father's parental rights.

home who reported that Father had dropped off of the children a few hours earlier saying he was "stressed out and needed a break." Grandmother further reported that when the children arrived the youngest was wearing only a shirt and had no pants or diaper on. Because Grandmother could not care for all four children she called her nephew, who came and got the two youngest children. DCS located the two youngest children at the nephew's home where he lived with his significant other, who reported previously seeing Father walking through the desert with all four boys, none of whom were wearing shirts.

¶5        Mother told DCS she was homeless and had relapsed on methamphetamine and marijuana. She also reported that two weeks prior, Father had been arrested for "cracking her skull open" with a closet rod, and that the two youngest children were present when the assault occurred.

¶6        Mother attended the initial preliminary protective hearing, where the court adopted a case plan of severance and adoption and where Mother received and signed both Form 1 and Form 3. *See* Ariz. R.P. Juv. Ct. Forms 1, 3. The forms state in pertinent part that the parents are required to attend all hearings and that if a parent fails to attend any hearing without good cause "the Court may determine that you have waived your legal rights and admitted the grounds alleged" in the dependency petition and in any motion or petition for termination. Mother also attended the second pretrial conference, held after the motion for termination was filed and had been served on her, in which Mother received another Form 3. When Mother failed to appear for the third pretrial conference, the court found there was no good cause for her nonappearance.

¶7        At the next pretrial conference, Mother stated that she did not attend the previous conference because the person she was staying with threw away all her papers. Mother also argued that she had a hearing impairment and had not been able to understand most of the previous proceedings. The juvenile court determined that Mother had read and signed Form 3 at prior hearings and could have called her attorney if she lost the paper work, stating, "[i]f she didn't keep in touch with her own attorney, then she does so at her own peril." The court also noted that Mother had not raised an issue with her hearing impairment in the past and that it was not applicable to her reading ability. The court therefore did not set aside the nonappearance and proceeded with severance testimony.

¶8        The DCS case worker testified that when the children were brought into custody, the two youngest children had various bruises on their bodies and splinters in their feet that were festering and required

medical attention. The three year old also had what appeared to be cigarette burn marks on the palm of his hand and the bottom of his foot. The witness testified that, when questioned, the three year old said his Father had burned him.

**¶9** The evidence presented also showed that the youngest child tested positive for methamphetamine during a hair follicle test, and was diagnosed with PTSD. DCS further provided evidence that Mother admitted to using marijuana immediately after the original dependency was dismissed in September 2013, and relapsed on methamphetamine in December 2013.

**¶10** The court found that DCS proved by clear and convincing evidence that Mother neglected or failed to protect the children from neglect so as to cause an unreasonable risk of harm to the children's health and/or welfare. *See* A.R.S. § 8-533(B)(2). The court further found that the children were previously cared for in an out-of-home placement pursuant to court order, that DCS made diligent efforts to provide appropriate reunification services, the children were returned to the custody of the parents, and the children were again removed from the legal custody of the parents within eighteen months. *See* A.R.S. § 8-533(B)(11)(a)-(d).

**¶11** The court also found that DCS proved by a preponderance of the evidence that termination of the parent-child relationship would serve the best interests of the children. The court held that doing so would further the case plan of adoption which would provide the children with permanency and stability. The court therefore terminated the rights of Mother and Father.

**¶12** Mother timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A) (2014), 12-120.21(A)(1) (2003), and 12-2101(A)(1) (Supp. 2014).

## DISCUSSION

**¶13** A parent's right to custody and control of his or her own child is fundamental, *Santosky v. Kramer*, 455 U.S. 745, 753 (1982), but not absolute, *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12, 995 P.2d 682, 684 (2000). To justify severance of a parental relationship, the State must prove by clear and convincing evidence one of the statutory grounds in A.R.S. § 8-533(B). *Michael J.*, 196 Ariz. at 249, ¶ 12, 995 P.2d at 685. The State must also prove by a preponderance of the evidence that severance of the parent-child relationship is in the best interest of the child. *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41, 110 P.3d 1013, 1022 (2005).

¶14 Because the juvenile court is in the best position to weigh the evidence and judge credibility, "we will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App. 2002). We do not reweigh the evidence, but "look only to determine if there is evidence to sustain the court's ruling," *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8, 83 P.3d 43, 47 (App. 2004), and reverse only if no reasonable evidence to support the ruling exists, *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 376, ¶ 13, 231 P.3d 377, 380 (App. 2010). We review a finding of good cause for failure to appear for an abuse of discretion. *Adrian E. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 96, 101, ¶ 15, 158 P.3d 225, 230 (App. 2007). "Generally, an abuse of discretion 'is discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 83, ¶ 19, 107 P.3d 923, 929 (App. 2005) (citation omitted).

I. **The Juvenile Court Did Not Err by Terminating Mother's Rights via Summary Proceeding**

¶15 Mother argues that the juvenile court erred by terminating her parental rights via a summary proceeding after Mother failed to appear for a pretrial conference. Mother contends doing so was a violation of her due process rights. Mother argues she had good cause for her failure to appear because she is homeless and lacks transportation or a phone. Mother explained that the person she was staying with threw all her papers away so she did not know when the hearing was. Mother also argued that her hearing impairment had caused issues with her understanding the previous proceedings.

¶16 Due process requires that reasonable notice be provided to interested parties giving them an opportunity to present any objections. *Mullan v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). In a termination proceeding, due process is satisfied when a parent is given notice and has "an opportunity to be heard or to defend." *Pima Cnty. Juv. Action No. S-949,* 131 Ariz. 100, 101, 638 P.2d 1346, 1347 (App. 1981).

¶17 Under the Arizona Rules of Procedure for the Juvenile Court, failure of a parent to appear at a properly noticed pretrial conference, without good cause, may result in the termination of parental rights based upon the record and evidence presented if that parent has previously been admonished regarding the consequences of failure to appear. *See* Ariz. R.P. Juv. Ct. 64(C), 65(C)(6)(c). If a court finds such a waiver, the parent is

precluded from introducing evidence to contest the statutory basis for termination, but retains the right to cross-examine witnesses and testify in regard to best interests. *Christy A. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 299, 306, ¶ 24, 173 P.3d 463, 470 (App. 2007).[3] The State must still meet its burden of proof on termination of parental rights. *See id*. at 304 n.9, ¶ 13, 173 P.3d at 468 n.9 (citing Ariz. R.P. Juv. Ct. 66(D)(2)).

**¶18**       To show good cause for her failure to appear, Mother needed to show that (1) mistake, inadvertence, surprise or excusable neglect exists and (2) Mother has a meritorious defense to the claims. *Id.* at  304, ¶ 16, 173 P.3d at 468. "Excusable neglect exists if the neglect or inadvertence 'is such as might be the act of a reasonably prudent person in the same circumstance.'" *Id.* "[A] finding of good cause for a failure to appear is largely discretionary . . . ." *John C. v. Sargeant*, 208 Ariz. 44, 47, ¶ 13, 90 P.3d 781, 784 (App. 2004), *superseded by statute on other grounds as recognized in Ariz. Dep't of Econ. Sec. v. Reinstein,* 214 Ariz. 209, 211, ¶ 4, 150 P.3d 782, 784 (App. 2007).

**¶19**       We find no abuse of discretion.  Even if Mother's housemate had thrown away her papers, Mother was at the prior hearings when the dates for future hearings were set and her failure to keep in touch with her attorney was at her own peril.  Mother offers no reason why she did not stay in touch with her attorney.  Furthermore, Mother did not demonstrate that she was unable to understand the proceedings.  Instead, the record shows that Mother fully participated in all proceedings, including properly responding to the court's questions.  The juvenile court was in the best position to gauge whether Mother had a hearing impairment and whether that impairment affected her understanding about the dates for hearings.  Mother's claim that she lacked transportation is not a showing of good cause for failing to appear. *See Bob H. v. Ariz. Dep't of Econ. Sec.,* 225 Ariz. 279, 282, ¶¶ 11-13, 237 P.3d 632, 635 (App. 2010).  Even if it were, we note that Mother does not point to any portion of the record where she asked

---

[3] We note that a different panel of this Court has held that a parent who has been found to waive their rights by failing to appear can still affirmatively present evidence to rebut evidence on the statutory grounds for termination. *Manuel M. v. Ariz. Dep't of Econ. Sec*., 218 Ariz. 205, 214, ¶ 31, 181 P.3d 1126, 1135 (App. 2008).  We adhere to our holding in *Christy A*. that upon a finding of a waiver, the non-appearing parent cannot present affirmative evidence to rebut evidence on the statutory grounds for termination, but can have her attorney both cross-examine witnesses on that issue and make appropriate objections and the party can testify on the best interests of the child. *Christy A*., 217 Ariz. at 306, ¶ 24, 173 P.3d at 470.

DCS to provide transportation and the record shows that Mother appeared at other hearings, thus belying her argument of inability to appear based on lack of transportation. Finally, the juvenile court did not abuse its discretion in noting that Mother could have used a pay phone to call her attorney about the dates.

**¶20** Based on this record, Mother's due process rights were not violated. Mother received notice of the hearings and the consequences of not attending the hearings including the termination of her parental rights. Furthermore, Mother was represented by an attorney at all proceedings which allowed for her to be both heard and defended. Mother's attorney actively represented her at the severance trial, and the court required DCS to prove the grounds for termination.[4] *See Christy A.*, 217 Ariz. at 306, ¶ 24, 173 P.3d at 470 ("[T]he requirement of fair procedures mandates giving Mother the opportunity to remain in the courtroom and participate."); *Adrian E.*, 215 Ariz. at 100, ¶ 10, 158 P.3d at 229 ("The procedures set forth in [Arizona Rules of Juvenile Procedure 65(C)(6)(c) and 66(D)(2)] closely mimic the cautionary language used in Rule 64(C) authorizing the court to deem a parent's failure to appear as a waiver of rights and admission of allegations and to enter a termination adjudication order based upon the record and evidence presented.").

## II.    Best Interest of the Children

**¶21** Mother also argues termination was not in the best interest of the children because the two youngest children were not in adoptive placements, and because the State did not prove the children lacked a bond with Mother.[5] We disagree.

**¶22** To show that termination is in the best interest of the children, DCS needed to prove that the children "would derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6, 100 P.3d 943, 945 (App. 2004). As such, there is no requirement to prove there was no bond

---

[4] Although Mother argues she had a meritorious defense, we need not address that because she did not show good cause for her nonappearance. *See Christy A.*, 217 Ariz. at 304, ¶ 16, 173 P.3d at 468 ("In order to show good cause, the moving party must show that (1) mistake, inadvertence, surprise or excusable neglect exists and (2) a meritorious defense to the claim exists.").

[5] Mother does not argue on appeal that the State failed to prove a statutory ground for termination, and thus we do not address that issue.

between Mother and the children. "The benefit of severance to the child is that which the legislature intended: freedom to be adopted into a stable and nurturing home." *In re Maricopa Cnty. Juv. Action No. JS-8441*, 175 Ariz. 463, 469, 857 P.2d 1317, 1323 (App. 1993), *abrogated on other grounds by Kent K.*, 210 Ariz. at 282, 288, ¶¶ 12, 41, 110 P.3d at 1016, 1022. DCS is not required to show that a specific adoption plan is in place before terminating a parent's rights, it only needs to show that the children are adoptable. *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352, 884 P.2d 234, 238 (App. 1994).

**¶23** The juvenile court found by a preponderance of the evidence that termination would benefit the children because it would further the plan of adoption providing the children with permanency and stability. At the time of trial, the two older children were in an adoptive placement and adoptable. Although the two younger children were not in an adoptive placement, the DCS case worker testified and the court found that they were adoptable. Therefore the court did not abuse its discretion by finding that severance was in the best interest of the children.

## CONCLUSION

**¶24** For the foregoing reasons, the record supports the juvenile court's termination of Mother's parental rights, and that severance is in the best interest of the children. Therefore, we affirm.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama

8